## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT,
CIVIL ACTION NO.

DOREN CUMMINGS,

Plaintiff,

v.

MAINSTAY SUPPORTIVE HOUSING
& HOME CARE, INC.

**RECEIVED**                    NH

Defendant.

4/20/2026

## COMPLAINT AND JURY DEMAND

### Parties

1.    Plaintiff Doren Cummings ("Mr. Cummings") is an individual residing in North Attleboro, Bristol County, Massachusetts. At all times relevant to this Complaint, Mr. Cummings was an employee of Defendant Mainstay Supportive Housing & Home Care ("Mainstay"), holding senior leadership positions including Director of Resident Services and Director of Marketing.

2.    Defendant Mainstay Supportive Housing & Home Care Inc. is, upon information and belief, a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business in the City of Newton, County of Norfolk, Commonwealth of Massachusetts. Mainstay is an "employer" within the meaning of the Family and Medical Leave Act ("FMLA") and Massachusetts General Laws Chapter 151B ("Chapter 151B").

### Jurisdiction and Venue

1

3.     This Court has subject matter jurisdiction over this action pursuant to Mass. Gen. Laws ch. 151B, § 9, which vests the Superior Court with jurisdiction over claims of unlawful discrimination and retaliation.

4.     This Court also has jurisdiction over claims arising under the Massachusetts Paid Family and Medical Leave law ("MA PFML"), Mass. Gen. Laws ch. 175M. An employee aggrieved by a violation of the anti-retaliation provisions of M.G.L. c. 175M may institute a civil action in the superior court.

5.     Plaintiff has satisfied all administrative prerequisites to filing this action. Plaintiff timely filed a charge of discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD"), designated as MCAD Docket No. 24nem03190, and the U.S. Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge No. 16C-2025-00101. The EEOC issued a Dismissal and Notice of Right to Sue on or about December 31, 2025.

6.     Venue is proper in this Court pursuant to Mass. Gen. Laws ch. 151B, § 9, as the Defendant resides and/or transacts business in Norfolk County, and the unlawful practices alleged herein occurred within Norfolk County.

## General Allegations

7.     Mr. Cummings commenced employment with Mainstay in or around 2019 and, through his exemplary performance, rose to senior leadership positions, including Director of Resident Services and Director of Marketing.

8.     Mr. Cummings consistently received positive performance evaluations, salary increases, and commendations for his work. In recognition of his contributions, Mainstay named him "Employee of the Year" in September 2023.

9.     At all relevant times, Mr. Cummings performed his duties in a manner that met or exceeded Mainstay's legitimate business expectations.

2

10. Mr. Cummings is a transgender man and, as such, is a member of a protected class under Mass. Gen. Laws ch. 151B.

11. Throughout his employment, it was a common and accepted practice at Mainstay for employees at all levels to hold secondary employment. Upon information and belief, Mainstay was aware of and condoned this practice, and in some instances, facilitated secondary employment for its staff, including for Mr. Cummings.

12. When Mr. Cummings was hired in 2019, he disclosed in writing during the onboarding process that he held a secondary job. Mainstay never raised this disclosure as a concern or indicated that it posed a conflict.

13. In or around May 2024, Mr. Cummings notified Mainstay of his need to take medical leave for a serious health condition, specifically for gender-affirming surgery (FTM double mastectomy).

14. In connection with his leave request, Mr. Cummings submitted a "Certification of Health Care Provider for Employee's Serious Health Condition" form under the FMLA and a "Certification of Your Serious Health Condition" under the MA PFML.

15. The medical certifications, completed by his health care provider, Dr. Adam Tobias, confirmed his serious health condition, the medical necessity of the surgery, and the anticipated period of incapacity.

16. The certifications specified that the surgery was scheduled for June 24, 2024, and that Mr. Cummings would be incapacitated and unable to work from approximately June 24, 2024, to July 15, 2024. The forms detailed that his recovery would involve "drain care, wound care + follow up appointments + activity restrictions," and that he would be unable to perform essential job functions such as lifting over five pounds, pushing, pulling, bending, or twisting.

Date Filed 4/20/2026 10:58 AM
Superior Court - Middlesex
Docket Number

17. In his May 2024 MA PFML application, Mr. Cummings again disclosed his secondary employment. His request for leave was approved by the Commonwealth and his employers without any issue being raised concerning his dual employment.

18. In or around June 2024, shortly after his request for protected medical leave was made and his gender identity was known to Mainstay, Mainstay abruptly terminated Mr. Cummings' employment.

19. Mainstay informed Mr. Cummings that the reason for his termination was that he held two full-time jobs and had failed to disclose this information.

20. The reason provided by Mainstay for Mr. Cummings' termination was pretextual.

21. Mainstay's proffered reason is contradicted by its long-standing practice of permitting secondary employment, its own facilitation of such employment for Mr. Cummings, and Mr. Cummings' repeated disclosures of his secondary employment without any objection from Mainstay.

22. Upon information and belief, Mainstay has selectively enforced its secondary employment policy solely against Mr. Cummings. Since his termination, no other employee at Mainstay known to hold secondary employment has been reprimanded or terminated for this reason.

23. The timing of the termination, occurring immediately after Mr. Cummings engaged in protected activity by requesting FMLA/PFML leave for his gender-affirming surgery, demonstrates a causal link between his protected activity and the adverse employment action.

24. Prior to his termination, Mr. Cummings was subjected to a hostile work environment by Mainstay's CEO, Larry Oaks, who engaged in aggressive and intimidating behavior, including yelling at Mr. Cummings on multiple occasions. This behavior caused Mr. Cummings significant stress, which contributed to his need for a prior medical leave in 2021.

25. Following his termination, Mr. Oaks, on behalf of Mainstay, engaged in a campaign of retaliatory harassment against Mr. Cummings.

4

26. Mr. Oaks intentionally and maliciously contacted Mr. Cummings' subsequent employers, Trinity Management and NECI, for the purpose of interfering with his employment relationship and jeopardizing his professional stability, income, and access to health insurance.

27. This retaliatory interference occurred on multiple occasions, including but not limited to, in or around June 2024, August 2024, November 2024, and January 2025.

28. Mainstay's actions have caused Mr. Cummings to suffer significant harm, including the loss of employment, wages, and benefits; emotional distress; and damage to his professional reputation.

### Count I — PFMLA - FMLA Retaliation

29. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. The Family and Medical Leave Act ("FMLA") makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). The FMLA's implementing regulations further provide that employers are prohibited from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

31. Similarly, the Massachusetts Paid Family and Medical Leave law ("MA PFML") makes it unlawful for an employer to take any retaliatory personnel action against an employee for exercising rights protected under M.G.L. c. 175M. M.G.L. c. 175M, § 2(e); 458 Mass. Code Regs. 2.16.

32. To establish a prima facie case of retaliation under the FMLA and MA PFML, a plaintiff must show that (1) they engaged in protected conduct; (2) they suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.

33.     Mr. Cummings engaged in protected activity when, in or around May 2024, he notified Mainstay of his need for leave and submitted medical certification for his own serious health condition, specifically for gender-affirming surgery. The request for FMLA-qualifying leave is protected conduct.

34.     Mainstay subjected Mr. Cummings to adverse employment actions, including but not limited to terminating his employment in June 2024. Termination is a quintessential adverse employment action. Moreover, Mainstay engaged in a post-termination campaign of harassment by contacting Mr. Cummings' subsequent employers in an attempt to interfere with his new employment relationships, which constitutes further retaliatory conduct.

35.     A causal connection exists between Mr. Cummings' protected activity and his termination. The adverse action followed in "very close temporal proximity" to his protected activity. Mr. Cummings was terminated just weeks after he formally requested protected medical leave. Such close timing is sufficient to support an inference of causation.

36.     Mainstay's proffered reason for terminating Mr. Cummings—his alleged failure to disclose secondary employment—was a pretext for unlawful retaliation. Evidence of pretext includes:

   a.   The "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Mainstay's reason for the termination.

   b.   The fact that Mainstay had a history of permitting and even facilitating secondary employment for its employees, including for Mr. Cummings.

   c.   Mr. Cummings' repeated disclosures of his secondary employment, both at the time of hire and in his PFML application, without any objection from Mainstay.

   d.   Mainstay's selective enforcement of its policy only against Mr. Cummings, and only after he engaged in protected activity related to his gender transition, and

e.  The close temporal proximity between the protected leave request and the termination.

37.    Mainstay used Mr. Cummings' request for protected medical leave as a negative factor in its decision to terminate his employment, in direct violation of 29 C.F.R. § 825.220(c) and the PFML. In the alternative, Mr. Cummings' protected activity was the "but-for" cause of his termination.

38.    As a direct and proximate result of Mainstay's retaliatory actions, Mr. Cummings has suffered and will continue to suffer damages, including but not limited to lost wages, loss of benefits, emotional distress, and harm to his professional reputation.

39.    By its actions, Mainstay has violated the anti-retaliation provisions of the FMLA, 29 U.S.C. § 2615(a)(2), and the MA PFML, M.G.L. c. 175M, § 2(e).

## Count II — FMLA and PFML Interference

40.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.    The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the statute. 29 U.S.C. § 2615(a)(1) as does the PFML under MGL c. 175M § 9.  These rights include the right to take job-protected leave for a serious health condition and the right to be restored to the same or an equivalent position upon return from leave.

42.    An interference claim alleges that an employer denied an employee their substantive rights under the PFLM and FMLA. Unlike a retaliation claim, a plaintiff does not need to prove retaliatory motive to prevail on an interference claim. Actions that discourage an employee from using FMLA or PFML leave can also constitute interference.

7

43. To state a claim for PFML or FMLA interference, a plaintiff must show: (1) they were eligible for FMLA/PFML protections; (2) their employer was covered by the FMLA/PFML; (3) they were entitled to take leave under the FMLA/PFML; (4) they gave the employer notice of their intent to take leave; and (5) the employer denied them FMLA/PFML benefits to which they were entitled.

44. Mr. Cummings satisfied all prerequisites for PFML/FMLA-protected leave. He was an eligible employee of a covered employer, was entitled to leave due to a certified serious health condition, and provided Mainstay with proper and timely notice of his intention to take leave.

45. Mainstay interfered with, restrained, and denied Mr. Cummings' substantive rights under the FMLA and MA PFML by terminating his employment in June 2024, just weeks before his scheduled and approved medical leave was to commence.

46. By terminating his employment, Mainstay made it impossible for Mr. Cummings to exercise his right to take leave for his serious health condition and effectively denied him his absolute right to be restored to his former position or an equivalent one upon the conclusion of his leave. This termination constituted a direct interference with and denial of his PFML/FMLA rights and benefits.

47. Furthermore, Mainstay's action of terminating a senior-level employee immediately after he requested protected leave for a gender-affirming surgery constitutes an act that would discourage a reasonable employee from exercising their rights under the PFML/FMLA, which itself is a form of interference. 29 C.F.R. § 825.220(b).

48. As a direct and proximate result of Mainstay's interference with his PFML/FMLA rights, Mr. Cummings has suffered damages, including but not limited to the loss of employment, lost wages and benefits, and other consequential damages.

8

Date Filed 4/20/2026 10:58 AM
Superior Court - Middlesex
Docket Number

49. By its actions, Mainstay has violated the FMLA's prohibition on interference, 29 U.S.C. § 2615(a)(1), and the job protection provisions of the MA PFML, M.G.L. c. 175M, § 2(e).

### Count III — Massachusetts Chapter 151B Discrimination/Retaliation

50. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Massachusetts General Laws Chapter 151B, § 4 makes it unlawful for an employer to discriminate against an individual in compensation or in terms, conditions, or privileges of employment because of their gender identity. It is also unlawful for an employer to discharge, expel, or otherwise discriminate against any person because they have opposed any practices forbidden under Chapter 151B.

52. To establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) they performed their job at an acceptable level; and (3) they were subject to an adverse employment action, such as termination. To prevail, a plaintiff must prove that the employer acted with discriminatory animus and that this animus was a cause of the adverse action.

53. Mr. Cummings is a member of a protected class based on his gender identity as a transgender man. He performed his job duties in an exemplary manner, as evidenced by his promotions and receipt of the "Employee of the Year" award in September 2023. He was subjected to a severe adverse employment action when he was terminated in June 2024.

54. To establish a prima facie case of retaliation, a plaintiff must show that: (1) they engaged in protected conduct; (2) they suffered an adverse action; and (3) a causal connection existed between the protected conduct and the adverse action.

Date Filed 4/20/2026 10:58 AM
Superior Court - Middlesex
Docket Number

55. Mr. Cummings engaged in protected conduct by, among other things, requesting leave for a medically necessary gender-affirming surgery, which is inextricably linked to his protected status under Chapter 151B.

56. Mainstay subjected Mr. Cummings to adverse employment actions, including termination and a subsequent campaign of malicious interference with his new employment relationships, conducted by its CEO, Larry Oaks.

57. A causal connection between Mr. Cummings' protected status and conduct and the adverse actions is established by, among other things, the close temporal proximity between his request for leave for gender-affirming surgery and his termination.

58. Mainstay's proffered reason for terminating Mr. Cummings—his alleged failure to disclose secondary employment—is a pretext for unlawful discrimination and retaliation. Evidence of pretext is substantial and includes Mainstay's inconsistent and selective enforcement of its purported policy, its prior awareness and acceptance of Mr. Cummings' secondary employment, and the timing of the termination.

59. Mainstay's actions were motivated by discriminatory animus toward Mr. Cummings' gender identity and in retaliation for his protected activities. This animus was a "determinative factor" in the decision to terminate him, and "but for" this unlawful motive, he would not have been terminated.

60. As a direct and proximate result of Mainstay's discriminatory and retaliatory conduct in violation of Mass. Gen. Laws ch. 151B, § 4, Mr. Cummings has suffered and will continue to suffer damages, including lost wages and benefits, emotional distress, and harm to his professional reputation.

## Damages

Date Filed 4/20/2026 10:58 AM
Superior Court - Middlesex
Docket Number

61. As a direct and proximate result of Defendant Mainstay's unlawful and discriminatory conduct, Plaintiff has suffered and will continue to suffer substantial damages.

62. These damages include, but are not limited to:

    a. Lost wages, salary, bonuses, and other compensation from the date of his unlawful termination to the date of judgment (back pay);

    b. Future lost wages, diminished earning capacity, and other compensation (front pay);

    c. The value of lost employment benefits, including but not limited to health insurance and retirement contributions;

    d. Damages for the emotional distress, humiliation, mental anguish, and pain and suffering he has endured as a result of Defendant's actions;

    e. Reputational harm and damage to his professional standing resulting from his wrongful termination and Defendant's subsequent retaliatory conduct;

    f. Liquidated damages in an amount equal to his compensatory damages plus interest, pursuant to the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii); and

    g. Punitive damages pursuant to Mass. Gen. Laws ch. 151B, § 9, to punish Defendant for its malicious, willful, outrageous, and reckless conduct and to deter similar conduct in the future; and h. Costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as provided by the FMLA and Mass. Gen. Laws ch. 151B.

63. Plaintiff is also entitled to an award of pre-judgment and post-judgment interest as provided by law.

### Prayer for Relief

WHEREFORE, Plaintiff Doren Cummings respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Mainstay Supportive Housing & Home Care and grant the following relief:

A. A declaration that the acts and practices of Defendant complained of herein are in violation of the FMLA and Mass. Gen. Laws ch. 151B;

B. An award of compensatory damages, including back pay and front pay, in an amount to be determined at trial;

C. An award of damages for emotional distress in an amount to be determined at trial;

D. An award of punitive damages in an amount to be determined at trial;

E. An award of liquidated damages as provided by the FMLA and PFML;

F. An award of reasonable attorneys' fees and the costs of this action;

G. An award of pre-judgment and post-judgment interest at the statutory rate; and

H. Such other and further legal and equitable relief as this Court deems just and proper.

## Jury Demand

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

DOREN CUMMINGS,

By their attorneys,

/s/Sonja L. Deyoe
Sonja L. Deyoe #665991 bbo
Law Offices of Sonja L Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
SLD@the-straight-shooter.com